Williams, J.
At tbe November term, 1886, of tbe court of common pleas of Hamilton county, tbe plaintiff in error was indicted under section 6969 of tbe Revised Statutes, for tbe crime of having become interested in a contract for the purchase of property for the use of tbe city of Cincinnati, *446 while acting as a member of the board of public works of that city, that being an office of trust and profit in this state. He was convicted at the'May term, 1887; and his motions for a new trial, and in arrest of judgment, having been overruled, and sentence pronounced, he filed his petition in error in this court, asking the reversal of the judgment.
1. It is first contended by the plaintiff in error, that the trial court erred in overruling his challenge to the juror Pfaflin. In regard to this assignment of error, it is sufficient to say, that the opinion of the juror was not formed from reading or hearing the testimony of witnesses, or conversations with them; but merely from newspaper reports. He testified on his voir dire, that he would, if selected, render an impartial verdict, and it appears that the court, by accepting him, was of the same opinion. He was a competent juror. McHugh v. State, 42 Ohio St. 154.
2. It is further contended, that section 6969 of the Eevised Statutes, has no application to officers of municipal corporations, but that it constitutes a crime for them to become interested in contracts, only when done in violation of section 6976. This is the proposition given most prominence in the argument, and apparently most relied upon, by plaintiff in error. The question is presented on the record in various forms ; first by the motion to instruct the jury to return a verdict for the defendant at the close of the testimony for the state; then by exceptions to the rejection of testimony offered by the defendant to prove the value of the property sold, and that he made no profits on the contract; again by exceptions to the charge of the court; ánd finally by the motion in arrest of judgment.
The two sections read as follows:
“ Section 6969. An officer elected or appointed to an office of trust or profit in this state, and an agent, clerk, servant, or employe of such officer, or of a board of such officers, who, while acting as such officer, agent, clerk, servant, or employe, shall become, directly or indirectly, interested in any contract for the purchase of any property or fire insurance for the use of the state, county, township, city, town, or village, shall be *447 imprisoned in the penitentiary not more than ten years nor less than one year.
“Section 6976. An officer or member of the council of any municipal corporation who is interested, directly or indirectly, in the profits of any contract, job, work, or services for the corporation, or acts as commissioner, architect, superintendent, or engineer, in any work undertaken or prosecuted by the corporation during the term for which he was elected or appointed, or for one year thereafter, shall be fined not more than one thousand nor less than five hundred dollars, or imprisoned not more than six months nor less than thirt days, or both, and shall forfeit his office.”
These sections define different crimes and prescribe different penalties. The former applies in terms to any officer, elected or appointed to an office of trust or profit in this state; the latter to officers of municipal corporations only. Under the former section the crime consists in the officer, while acting as such, becoming interested in any contract for the purchase of property or fire insurance for the use of the state, county, township, city, town, or village; by the latter it is made to consist in the municipal officer becoming interested in the profits of any contract, job, work, or services for the corporation, or acting as commissioner, architect, superintendent, or engineer of any work undertaken or prosecuted by the corporation, during his term, or for one year thereafter. Allowing that the former includes municipal officers, the sections provide for distinct offences, and both may consistently stand, and be made operative.
It is not claimed for the plaintiff in error, that the office held by him was not one of trust or profit in this state, or that the contract in which he is charged to have been interested, was not for the purchase of property for the use of the city, and made while he was acting as such officer, within the exact terms of section 6969. His real contention is, that, because by the revision of the statutes, section 22 of the act “ to regulate the Ohio soldiers’ and sailors’ orphans’ home” (73 Ohio L. 31), section 21 of the act “to better provide for the organ *448 ization of hospitals for the insane” (73 Ohio L. 86), and section 34 of the act “ to regulate and govern the Ohio penitentiary” (73 Ohio L. 43), were carried into section 6969, it must, by construction, be limited in its application to the officers and cases specified in those acts. By them, it was made criminal for any trustee, superintendent, physician, or matron of the soldiers’ home, or of any hospital for the insane, to be interested in any contract for the purchase of any building material, or for any building or improvement, or for any article of furniture supply, or provisions, for the use of their respective institutions; and for any officer or employe of the penitentiary to be interested in any contract of purchase made by the steward.
This court has repeatedly recognized and applied the rule relied on by counsel for the plaintiff in error, that “ where an act of the legislature, or several acts in pari materia, have undergone revision, the same construction will prevail as before revision, unless the language of the new act plainly requires a change of construction to conform to the manifest intent of the legislature.”
It would seem, however, that the legislature intended the section under discussion to have a more general application than the statutes referred to, from the fact that it is no longer part of the legislation relating to particular institutions, but is incorporated into the general crimes act; and its provisions are not, as were those statutes, confined to certain specified officers of those institutions, but in express terms embrace all officers, elected or appointed to any office of trust or profit in the state. By no construction of its language can it be limited to the officers of the institutions mentioned, or to the kinds of contracts specified in the former statutes. There is no rule of construction which authorizes the court to say that the language, “any contract for the purchase of property for the use of the state, county, township, city, town or village,” means simply contracts for the purchase of property for the use of the penitentiary, hospitals for the insane, or soldiers’ home; or that the language “an officer elected or appointed to an office of trust or profit in this state,” comprises none but trus *449 tees, physicians, matrons and stewards of the penal and benevolent institutions of the state.
It must be admitted that the provisions of section 6969 are more comprehensive than the statutes in force at the time of the revision, and this being conceded, the rule of construction contended for becomes inapplicable, and the scope of the section must be determined by giving effect to its language, which is plain and unambiguous. It is not difficult to see why the section was enacted in its present form, for if, to make it a grave crime for officers of the public institutions of the state to be interested in contracts pertaining to such institutions, be a wise measure, calculated to insure official integrity, and protect the state against frauds, sound policy would seem to require that a like provision be extended to all similarly situated. To permit those holding offices of trust or profit to become interested in contracts for the purchase of property for the use of the state, county, or municipality of which they are officers, might encourage favoritism, and fraudulent combinations and practices, not easily detected, and thus make such officers, charged with the duty of protecting those whose interests are confided to them, instruments of harm. The surest means of preventing this, was to prohibit all such contracts; and the legislature having employed language sufficiently clear and comprehensive for this purpose, there is no authority in the courts under the pretext of construction to render nugatory the positive provisions of the statute. We see no reason to doubt that section 6969 applies to officers of municipal corporations, and there was, therefore, no error in overruling the motion of the defendant below to instruct the jury to return a verdict of acquittal, nor in excluding the evidence offered by him to prove the value of the property, or that he made no profits on the contract, nor in the charge of the court on that question.
3. The court in its charge instructed the jury as follows: “ Defendant’s counsel claim that no valid contrast existed between the city and the defendant, at the time the horses were sold to the city, because the comptroller of the corporation did *450 not first certify that the money required for the contract was in the city treasury, especially set apart to moot such expenditure. Upon this question I will say, that if the jury find upon the evidence in the case that the defendant sold and delivered the horses named in the indictment to the city, that the city had the horses in its actual possession, and that the city had appropriated the horses by using them in carts, upon its streets; and if the jury also find that at the time the horses were so appropriated, and used by the city of Cincinnati, there was money in the ■ city treasury, and that the defendant received a warrant upon the city treasury, for full payment of all horses so in the possession of said city, then I instruct you that the fact that the certificate of the comptroller is wanting, certifying that there was money in the city treasury, at the time of the sale of said horses to the city, by the defendant, can be no defense in this case.”
This was excepted to at the time, and is one of the errors assigned.
It is said that under sections 2699, 2702 (2690 j., vol. 3, p. 167) of the Revised Statutes, all contracts of such municipal corporations, involving the expenditure of money, are void, unless the proper officer shall first certify that the money required for the contract is in the treasury, to the credit of the proper fund; and such is the purport of those sections. The argument made is, that in order to convict, it was incumbent on the state to prove that the defendant became interested in a valid contract; one that could be enforced by either party, because from uo other could there be any danger to the city; and that proof by the state that the defendant became interested in a contract declared by the statute to be illegal and void, was equivalent to proving there was no contract. This proposition carried to its logical conclusion would render section 6969 wholly inoperative, by making a conviction thereunder impossible; for all contracts made by officers in violation of its provisions, and by the making of which they commit the crime it punishes, are necessarily illegal and void. Neither party could enforce them, because it is a crime to make tlmm. In every prosecution under the section, it being necessary for *451 the state to prove tliat the accused became interested in a contract prohibited by it, proof of the crime, would establish the defense ; and the clearer the crime was made out, the clearer would be the defense. The mischief the statute was intended to remedy, may be done as readily under contracts made when the sections referred -to are disregarded, as under those made in conformity to them ; for officers who are willing to violate one statute, will find convenient methods of evading others. There was in our opinion no error in this charge.
4. The following portion of the charge of the court was excepted to : “ "What is it to become directly or indirectly interested in a contract, in the sense contemplated by the statute, upon which this indictment is founded ? To be interested in a contract, is to-have and to hold some pecuniary interest in it; to have and to hold a share, portion, or part of it or in it. If the jury find from all the evidence in this case that the defendant, Charles Doll, at or about the first day of October, 1885, at the time the bill for $3,010, was presented by him and allowed by the board of public works, and at the time of the payment of the same by the treasurer, was interested personally in the proceeds of'said contract, and' that he received* any part of the proceeds of the warrant made in payment of the said horses, from the said treasurer of the city of Cincinnati, while acting as such officer; or if you find from all the evidence in the case that he bought the horses named in the indictment at a certain sum, and afterwards, while acting as such officer, sold them to the city for another and larger sum than he paid for them; then, in either event, he would have an interest in the contract in the sense of the law.”
This is assigned for error; the claim being that on the trial the defendant gave evidence tending to show that he was not interested in the contract for the sale of the horses to the city of Cincinnati, but acted only in the capacity of an agent for the city in purchasing them for it;- and that under the charge excepted to, the jury may have convicted him, although they found he had no other connection with the contract than as such agent.
*452 It is quite clear the charge will not admit of that construction. If the defendant bought the horses for one price, and sold them to the city for a greater, he would in no sense be merely an agent; nor would he if he had a personal interest in the proceeds of the contract of sale, and received part of the consideration paid for them. As a mere agent for the purchase of the horses, he could have no personal interest in the proceeds of their sale. The charge plainly forbids the conclusion drawn by the plaintiff in error. If he depired a more explicit instruction upon his theory of the case, it was easy for his counsel to have requested it. It is well-settled in this state that the omission of the court to charge the jury upon a particular question arising in a case, is not erroneous and cannot be made a ground of error unless an instruction be requested. Jones v. State, 20 Ohio, 34.
There are some other assignments of error, but they do not call for particular notice. We have carefully examined the whole record, and fail to find error justifying the reversal of the judgment.

Judgment affirmed.